UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEMAR MURRAY                                        **FIRST AMENDED COMPLAINT**

                                                    **14 CV 9294 (LTS)**
                                                    **ECF Case**

                         Plaintiff,

              vs.

The CITY OF NEW YORK,
DETECTIVES WILLIAM VARGAS,
RICARDO MANTILLA,
SERGEANT STEPHEN LOUD, and UC245,
in their individual and official capacities,

                                                    **JURY TRIAL DEMANDED**

                         Defendants.
-----------------------------------------------------------x

Plaintiff Demar Murray, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the arrest and prosecution of Demar Murray

("Plaintiff") on the false and fabricated grounds that he sold fake drugs to an undercover

officer.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section

1983") against the individual defendants for false arrest and imprisonment, malicious

prosecution, and failure to intervene, and a *Monell* claim against the City of New York

for the same constitutional violations.  Additionally, Plaintiff asserts analogous claims

under New York Law against the individual defendants, and against the City of New

York under the doctrine of *respondeat superior.*  Plaintiff seeks compensatory and

punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state

and federal civil rights law.

1

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   Plaintiff Demar Murray is a 28-year-old, African-American male, a United States citizen, and at all relevant times a resident of the City of New York, State of New York.

7.   The individually named defendants Detective William Vargas (Shield # 6905) ("Det. Vargas"), Sergeant Stephen Loud (Shield # 924) ("Sgt. Loud"), Detective Ricardo Mantilla (Shield # 523) ("Det. Mantilla"), and UC245 (collectively, the "individual

defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.      On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Borough Manhattan South.

9.      Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI023432.  At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on October 6, 2014.

13.     This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.     Plaintiff works as a supervisor at the LOL Comedy Club ("the Club") in Times Square, Manhattan.  One of his principal duties is selling tickets for comedy shows at the Club, which he does on the streets around Times Square.

15.     Plaintiff has no criminal history and no criminal record.  Prior to June 10, 2014, he had never been arrested, and he has not been arrested since that day.

16.     On June 10, 2014, Plaintiff began work around 5 PM, standing at 5 Times Square, on the corner of 7th Avenue and 42nd Street ("the Intersection"), offering tickets to passersby.

17.     The Intersection – like most of Times Square – is a crowded, bustling area, dense with tourists and pedestrians, numerous event-promoters and vendors, with many cameras and a heavy NYPD presence.

18.     After a couple hours of work, Plaintiff took a break and went to a nearby Baja Fresh restaurant (1441 Broadway), where he sat and ate dinner, spending about thirty minutes inside.  Upon leaving Baja Fresh, around 7:45 PM, Plaintiff refilled his soda at the soda machine.

19.     Plaintiff left Baja Fresh and walked back to the Intersection.  There, Plaintiff saw two acquaintances – Denelle Joly ("Mr. Joly") and Gary Foreman ("Mr. Foreman") – standing across 42nd Street, on the northwest corner of the Intersection.

20.     Mr. Joly and Mr. Foreman work for other comedy clubs in Times Square. Though competitors, the three men are amicable and cordial to each other.

21.     Plaintiff crossed 42nd Street to ask Mr. Joly and Mr. Foreman if either of them wanted his newly filled soda, but they declined his offer.  The men chatted for less than a

minute about business – whether it was a fast night or slow night selling comedy tickets – then Plaintiff walked in front of 3 Times Square to continue selling tickets.

22.     Nothing illegal or suspicious took place during the encounter between Plaintiff and his two acquaintances.  No objects were exchanged; no discussions of anything criminal or nefarious took place.

23.     Plaintiff wore jeans, a t-shirt, and sneakers, as well as a backpack with promotional materials for the Club.  He held his Comedy Book (a small brochure showcasing the Club's performers) and his soda.

24.     After walking away from Mr. Joly and Mr. Foreman, Plaintiff saw Mr. Joly go with a woman into the Chase Bank at 3 Times Square.

25.     Plaintiff did not know that woman, had never spoken to her, had never seen her prior to that evening.  Unbeknownst to Plaintiff, that woman was an undercover police officer – individual defendant UC245 – to whom Mr. Joly was in the process of selling fake cocaine.

26.     After two minutes inside the Chase Bank, Mr. Joly and PO Jane Doe exited the bank together, then walked in different directions.

27.      Mr. Joly saw Plaintiff near the Bank and approached him.  They chatted for no more than thirty seconds before Mr. Joly walked away.  At no point during this brief interaction did Plaintiff do, say, or display anything unlawful or suspicious.

28.     Soon after walking away from Plaintiff, Mr. Joly suddenly broke into a sprint. Plaintiff saw two undercover officers chasing Mr. Joly.  The officers caught up with Mr. Joly and placed him under arrest.

29.     Numerous undercover officers and Narcotics Borough Manhattan South detectives, including Det. Vargas, Det. Mantilla, and Sgt. Loud, the leader of the "buy and bust" operation, swarmed the area.

30.     Plaintiff stood and watched the chaotic scene, not knowing what was transpiring.  Plaintiff also saw Mr. Foreman in handcuffs, being led by a police officer.

31.     Plaintiff noticed that Mr. Joly, in sprinting away, had dropped his comedy club promotional materials on the street, namely his comedy book and a laminated sign. Wanting to save those materials, Plaintiff bent to pick them up.

32.     As Plaintiff bent down, Det. Mantilla stepped behind him and ordered him to place his hands behind his back, informing Plaintiff he was "under arrest."  Plaintiff complied with the order.

33.     Det. Mantilla handcuffed Plaintiff's wrists behind his back, searched his pockets, and took Plaintiff's bag and cell phone.

34.     Plaintiff asked Det. Mantilla why he was arrested, but Det. Mantilla ignored the question.  When Sgt. Loud approached, Det. Mantilla asked "What about him?" (referring to Plaintiff) to which Sgt. Loud replied "Take all three of them" (referring to Plaintiff, Mr. Foreman, and Mr. Joly).

35.     Plaintiff was then escorted around Times Square in handcuffs, paraded in front of numerous bystanders and coworkers at the Club.

36.     Plaintiff was placed in a NYPD van, driven around for an hour, then taken to the 14th Precinct, where Plaintiff was booked and processed.

37.     After about three hours inside the precinct's holding cells, Plaintiff was transported to Central Booking in Manhattan, where he remained until the following evening.

38.     Around 10 PM on June 11, 2014, Plaintiff was arraigned on Docket 2014NY045242, and charged with various misdemeanors including Imitation Controlled Substance, Criminal Possession of Stolen Property, Fraudulent Accosting, and Petit Larceny.  Mr. Foreman was named as his co-defendant.

39.     The criminal court complaint ("the Complaint") is sloppily drafted and fails to identify any wrongdoing by Plaintiff.

40.     Insofar as the Complaint describes Plaintiff's behavior, it is a fabrication that attempts to convert innocent behavior into criminal behavior, a fabrication used by the individual defendants to try to justify their false arrest of Plaintiff.

41.     The Complaint alleges the time and place of the crime to be "June 10, 2014 at about 7:50 P.M., inside 3 Times Square in the County and State of New York."

42.     The Complaint is signed and sworn to by Det. Vargas, who bases his factual allegations on information provided by UC245.

43.     In the Complaint, Det. Vargas states:  "I am informed by undercover police officer C0245 [UC245] of the Narcotics Borough Manhattan South, that the undercover approached separately charged defendant Denelle Joly and asked where she could buy cocaine.  The separately charged defendant then said in substance, "Yes.  Follow me." The separately charged defendant then walked the undercover down the block and approached defendant Foreman.  The separately charged defendant then said in substance to defendant Foreman that the undercover was looking for cocaine.  Defendant Foreman

then responded in substance, "I can get some for you from my friend." The separately charged defendant and the undercover then waited while defendant Foreman left and returned with defendant Murray. The separately charged defendant and the defendants Foreman and Murray then spoke to each other. The separately charged defendant then gave the separately charged defendant $50 for a bag containing what appeared to be cocaine…. I know that the substance is not cocaine based on a field test I conducted that tested negative for the presence of cocaine."

44.     At Plaintiff's arraignment, the New York County District Attorney's Office recommended 2 days of Community Service on a guilty plea to the top charge of Imitation Controlled Substance (NY Public Health Law Section 3382(2)).

45.     Plaintiff pled "not guilty" and was released on his own recognizance, ordered to return to Criminal Court at 100 Centre Street on July 21, 2014.

46.     When Plaintiff attended Criminal Court on July 21, 2014, his case was adjourned to September 16, 2014.

47.     When Plaintiff attended Criminal Court on September 16, 2014, his case was dismissed for failure to prosecute, pursuant to Criminal Procedure Law Section 30.30.

48.     Plaintiff's cell phone had been vouchered as "Arrest Evidence" under Voucher # 1000508674 throughout the prosecution. He was able to get it back at One Police Plaza only after his case was dismissed.

49.     The prosecution against Mr. Foreman was also dismissed for failure to prosecute, while the case against Mr. Joly was resolved at his arraignment with a guilty plea to Public Health Law Section 3383(3), selling "an imitation controlled substance."

These outcomes are consistent with the truth that only Mr. Joly had been involved in a drug-related transaction with the undercover officer.

50.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

51.      There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

52.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

53.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

54.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

55.     The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest

people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

56.    As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

57.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

58.    All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

59.    All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

60.    The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

61.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### False Arrest Under Section 1983

62.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

63.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

64.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

65.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

66.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

67.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

68.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the D.A..

69.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

70.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

71.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

72.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

73.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

### Municipal Liability Under Section 1983

74.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

75.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

76.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

## FIRST CLAIM

**False Imprisonment under N.Y. State Law**

77.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

78.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

79.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

**Malicious Prosecution Under N.Y. State Law**

80.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

81.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

82.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

83.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

84.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

85.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

86.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

**FOURTH CLAIM**

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

87.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

88.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

89.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

90.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

91.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

92.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

**FIFTH CLAIM**

**Respondeat Superior Under N.Y. State Law**

93.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

94.    Defendant City is the employer of the individual defendants.

95.    Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

96.    As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.    An order awarding compensatory damages for Plaintiff Demar Murray in an amount to be determined at trial;

b.    An order awarding punitive damages in an amount to be determined at trial;

c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.    Such other and further relief as this Court may deem appropriate.


DATED:        March 16, 2015                 _____s/_____
             New York, New York             CYRUS JOUBIN, ESQ.
                                            88 Pine St., 14th Floor

New York, NY 10005
(703) 851-2467
joubinlaw@gmail.com
Attorney for Demar Murray